UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACOB WESLEY SCOTT,

                    Petitioner,

-vs-                                                    Case No.  8:09-cv-1637-T-33MAP

SECRETARY, DEPT. OF CORRECTIONS,

                    Respondent.

_____/

## ORDER

Jacob Wesley Scott timely petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Scott challenges the revocation of the probationary portion of his split sentence imposed by the Circuit Court for the Thirteen Judicial Circuit, Hillsborough County, Florida, in case no. 99-14018.

A review of the record demonstrates that the petition must be **denied.**

## BACKGROUND

Scott was found guilty after a jury trial of grand theft as charged in case no. 99-14018. Scott was initially sentenced as a habitual felony offender to ten years incarceration. Subsequently, he sought postconviction relief under Florida Rule of Criminal Procedure 3.850. At an evidentiary hearing on February 27, 2003, Scott indicated he would withdraw his postconviction motion in exchange for a habitual offender sentence of ten years, suspended after five years in prison, and followed by five years probation.  The Court agreed and Scott was resentenced to ten years incarceration as a habitual felony offender with the sentence to be suspended after five years incarceration, and followed by five years probation. Scott did not appeal from the February 27, 2003 amended judgment.

However, Scott filed a Rule 3.800(c) motion for reduction of his sentence. In response, on July 7, 2004, the state trial court entered a corrected amended judgment providing for additional jail time credit.

## STATE PROBATION VIOLATION PROCEEDINGS

On or about January 24, 2005, subsequent to his release from the incarceration portion of his split sentence, Scott was arrested for violating probation. The state court held evidentiary violation proceedings on March 16, 2006 and April 10, 2006, at the conclusion of which the state court found that Scott violated conditions one and five of his probation. The state court revoked Scott's probation and sentenced Scott to ten years incarceration as a habitual felony offender, with prison credit for five years of the ten-year sentence.

## FINALITY OF PROBATION REVOCATION

Scott appealed the probation revocation order, and following briefing, on January 4, 2008, the state district court of appeal per curiam affirmed the state trial court's ruling in case no. 2D06-2105. *Scott v. State*, 972 So.2d 185 (Fla. 2d DCA 2008)[table]. Rehearing was denied February 8, 2008.

## STATE COLLATERAL PROCEEDINGS

By then, Scott had filed a pro se state petition for writ of habeas corpus dated June 20, 2007. On July 9, 2007, the state district court of appeal denied the petition in case no. 2D07-3006. *Scott v. State*, 961 So.2d 947 (Fla. App. Dist. 2007)[table]. Scott's motion to stay was denied on July 25, 2007.

During the pendency of his direct appeal, on July 3, 2007, Scott  improperly filed a pro se Rule 3.800(a) motion to correct sentence.  The state court denied the motion and

Scott appealed. The state district court of appeal reversed and remanded, stating:

> Jacob Wesley Scott appeals the summary denial of his motion filed pursuant to Florida Rule of Criminal Procedure 3.800(a). Mr. Scott filed the motion on July 7, 2007, while the direct appeal of his judgment and sentence in the same case was pending. Thus, the postconviction court improperly denied the motion rather than striking it as unauthorized. *See Ladson v. State*, 907 So.2d 1288 (Fla. 2d DCA 2005). We reverse and remand for the postconviction court to strike the unauthorized motion. Once the mandate issues on his direct appeal, Mr. Scott may file a rule 3.800(a) motion on the same issue should he seek further relief. *See id. Scott v. State*, 976 So.2d 628 (Fla. App. Dist. 2008).

*Scott v. State*, 976 So. 2d 628 (Fla. 2d DCA 2008). *Scott v. State*, 976 So. 2d 628. The mandate issued March 18, 2008.

Scott filed a pro se Rule 3.850 motion for postconviction relief on February 20, 2008, The state court denied the motion on October 22, 2008, without an evidentiary hearing. Scott appealed, and on July 29, 2009, the state district court of appear per curiam affirmed the denial of relief in case no. 2D08-5886. *Scott v. State*, 14 So.3d 1013 (Fla. 2d DCA 2009) [table]. The mandate issued August 26, 2009.

By then, Scott had also filed a pro se Rule 3.800(a) motion dated March 20, 2008. Following denial of the motion, he appealed, and on March 6, 2009, the state district court of appeal  per curiam affirmed the denial of relief. *Scott v. State*, 6 So.3d 66 (Fla. 2d DCA 2009). The mandate issued April 24, 2009.

Scott then filed the present 28 U.S.C. § 2254 petition, raising six grounds for relief.

## STANDARDS OF REVIEW

### THE AEDPA STANDARD

Scott's petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v. Garceau*, 538 U.S. 202 (2003); *Lindh v.*

*Murphy*, 521 U.S. 320, 326-27 (1997). AEDPA affects this Court's review of both factual findings and legal rulings entered by the state courts in the rejection of Scott's federal claims.

Pursuant to 28 U.S.C. § 2254(e)(1), this Court's review of state court factual findings must be highly deferential; such findings are presumed correct, unless rebutted by a petitioner with clear and convincing evidence. *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002); *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002). Similarly, the legal rulings of claims adjudicated in state courts only provide a basis for federal relief where the state court adjudication was either "contrary to" clearly established federal law as determined by the United States Supreme Court, or involved an "unreasonable application" of such law. See 28 U.S.C. § 2254(d)(1); *Haliburton v. Secretary, Dept. of Corrections*, 342 F.3d 1233, 1238 (11th Cir. 2003).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed these standards at length. The Court explained that a state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. The question is whether the state court correctly identified the proper rule of law to be applied. *Robinson*, 300 F.3d at 1344-45; *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court decision is not "contrary to" established federal law even if a federal court might have reached a different result relying on the same law. *Williams*, 529 U.S. at 405-06; *Robinson*, 300 F.3d at 1344-45.

A state court ruling is an "unreasonable application" of clearly established federal

4

law if it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. A federal court does not independently review the correctness of the state court adjudication; the "unreasonable application" analysis requires a showing that the state court ruling is not simply incorrect or erroneous, but objectively unreasonable. *Williams*, 529 U.S. at 409-410; *Robinson*, 300 F.3d at 1345; *Putman*, 268 F.3d at 1241. The measuring stick for both the "contrary to" and "unreasonable application" assessments of the state court merits adjudication is "clearly established federal law," which refers only to the holdings, and not dicta, of the United States Supreme Court at the time of the relevant state law decisions. *Williams*, 529 U.S. at 412; *Putman,* 268 F.3d at 1241.

In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court set forth the standard for relief where error is determined, on habeas review, to exist. This test is "less onerous" than the harmless error standard enunciated in *Chapman v. California*, 386 U.S. 18 (1967). "The test is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Brecht*, 507 U.S. at 637. Although no constitutional error has occurred in this case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

AEDPA requires greater deference to state court decisions than the traditional de

novo standard of review; Scott has the burden to overcome the presumption of correctness attached to state court factual findings or to establish that the state court legal rulings were contrary to, or unreasonable applications of, established federal law. *Crawford,* 311 F.3d at 1295.

## STANDARD FOR PROCEDURAL DEFAULT/PROCEDURAL BAR

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell,* 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review. "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing *O'Sullivan*, 526 U.S. at 845). This is required even if the state

6

Supreme Court rarely grants such petitions and usually answers only questions of broad significance. *O'Sullivan*, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138. "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d at 891(quoting *Judd v. Haley*, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice," Scott must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis,* 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982). Scott must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell,* 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); , 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson,* 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The *Schlup* Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup* 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction."

*Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

"The Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default." *Henderson v. Campbell*, 353 F.3d at 896. In *Edwards v. Carpenter*, 529 U.S. 446, 451- 52 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this ineffective assistance claim in state court, and he was now procedurally barred from raising the claim. The Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim. *Id.* at 451-53.

## STATE LAW CLAIMS

Generally, a claim alleging a violation of state law is not subject to review by a petition for the writ of habeas corpus. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *McCullough v. Singletary*, 967 F.2d 530, 535-36 (11th Cir.1992). To the extent raised in a federal habeas petition, a federal question is not exhausted in state court if raised in state court only as a state law claim. *Anderson v. Harless*, 459 U.S. 4, 6-8 (1982). A federal claim not "fairly presented" to a state court is procedurally defaulted for federal habeas purposes. *Baldwin v. Reese*, 541 U.S. 27 (2004).

## STANDARD FOR EFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim of ineffective assistance of trial or appellate counsel, a

Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

**DISCUSSION**

GROUND ONE

Scott claims he was denied the right to appeal and challenge the reasons for which the Florida courts revoked his probation.[1] Scott does not, however, challenge the sufficiency of the affidavit alleging that he violated probation. Nor does he dispute that the state trial judge specified the particular conditions he violated. Instead, he complains in his supporting facts that he had to "guess" the "reasons" why the state court judge found that Scott violated probation.

In Florida, "an affidavit upon which a permanent revocation of probation is to be based must allege the basic facts concerning the alleged violation, such as its nature, time, and place of occurrence. However, an allegation concerning the commission of a crime need not be set forth with the specificity required in criminal indictments and informations.

---

[1] To the extent Scott challenges the sufficiency of the state court's findings under Florida law, this Court does not have subject matter jurisdiction to address the claim, because federal courts must abide by state courts' rulings on matters of state law. *Mullaney v. Wilbur*, 42a U.S. 864, 691 (1975).

Moreover, ground one is not exhausted because Scott did not timely raise, and thereby preserve, a federal constitutional claim regarding the trial court's findings before raising his claim on such on direct appeal.

The primary goal is notice comporting with minimal due process rights. If a probationer needs additional information in order to properly prepare a defense to the charges, the various methods of discovery under our rules are available to him." *Hines v. State*, 358 So. 2d 183, 185 (Fla. 1978).

Alleged deficiencies in a probation violation affidavit are subject to harmless error analysis. *Jackson v. State*, 807 So. 2d 684, 685 (Fla. 2d DCA. 2001)(citing *Hines*, 358 So. 2d at 185). In revoking probation, the trial court is required to render an order setting forth the specific conditions of probation that the probationer violated. *Bishop v. State*, 21 So. 3d 830 (Fla. 1st DCA 2008 (citing *Jones v. State*, 638 So. 2d 126, 127 (Fla. 1st DCA 1994)); *Fields v. State*, 737 So. 2d 1156 (Fla. 2d DCA 1999).

The standard of proof for probation/community control revocation proceedings is less stringent than the standard of proof for a criminal offense. The trial court has broad discretion in determining whether there was a willful and substantial violation of a condition of probation, *Bernhardt v. State*, 288 So. 2d 490, 495 (Fla. 1974), and whether the violation has been proven by the greater weight of the evidence. *State v. Carter*, 835 So. 2d 259, 262 (Fla. 2002). The determination of whether probation should be revoked is fact specific in that "[t]rial courts must consider each violation on a case-by-case basis for a determination of whether, under the facts and circumstances, a particular violation is willful and substantial and is supported by the greater weight of the evidence." *See Russell v. State*, 982 So. 2d 642, 646 (Fla. 2008) (citing *Carter*, 835 So. 2d at 261; *Anthony v. State*, 854 So.2d 744, 747 (Fla. 2d DCA 2003)(trial court may revoke a defendant's probation or community control only upon a determination that the greater weight of the evidence supports a finding of a willful and substantial violation, and standard of review is abuse of

-11-

discretion). Willfulness may be proven by circumstantial evidence. *Francois v. State,* 923 So. 2d 1219, 1220 (Fla. 3rd DCA 2006); *Hanania v. State*, 855 So. 2d 92, 94 (Fla. 2d DCA 2003).

The *Carter* Court explained the appellate court's role in probation revocation matters:

> On appeal from the trial court's decision on the issue [of revoking probation], the standard of review is abuse of discretion. That is, the appellate court must determine whether or not the trial court acted in an arbitrary, fanciful or unreasonable manner in determining that [appellant's] violation was both willful and substantial.

*State v. Carter*, 835 So. 2d at 262. The credibility of witness testimony at a probation violation hearing is entirely within the province of the trial court. *Marcano v. State*, 814 So.2d 1174, 1176 (Fla. 4th DCA 2002) (whether a probation violation has been proven is a question of fact for the trial court).

Moreover, Scott fails to meet his burden of showing that the state court decision resulted in an unreasonable application of federal law as clearly established by the Supreme Court.  In *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972), the Supreme Court set out the "minimum requirements of due process" applicable to parole revocation proceedings, including:

> (a) written notice of the claimed violations of parole;
> (b) disclosure to the parolee of evidence against him;
> (c) opportunity to be heard in person and to present witnesses and documentary evidence;
> (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);
>  (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and
> (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

408 U.S. at 489.  The *Morrissey* Court emphasized, "there is no thought to equate [the

-12-

revocation hearing] to a criminal prosecution in any sense.... [T]he process should be flexible enough to consider evidence ... that would not be admissible in an adversary criminal trial." *Id.* Indeed, all that is required is "an informal hearing structured to assure that the finding of a[n] [early release] violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the [releasee's] behavior." *Id.* In *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the Supreme Court concluded that the procedures for parole revocation outlined in *Morrissey* should also apply to probation proceedings. *Gagnon*, 411 U.S. at 782.

Scott does not suggest he lacked written notice of the claimed probation violations, and it is objectively reasonable to conclude he had adequate disclosure of the evidence against him. He was notified of the violation charges, was present at a hearing where he had the opportunity to confront and cross-examine witnesses and testify on his own behalf, as well as to present documentary evidence at proceedings conducted by an impartial jurist.

The affidavit of violation of probation alleged that Scott violated condition one by failing to make a full and truthful report on a form provided by his probation officer. (Ex. 1, Vol V, R 1025) The affidavit alleged that on February 1, 2005, Scott was instructed by Officer Bufe to report to the probation office during the first week of each month, and as of September 15, 2005, Scott had failed to report in September. Id. Further Scott was alleged to have violated condition five by committing grand theft on August 17, 2005, and August 25, 2005. Id.

At the evidentiary probation proceedings, Scott was allowed to question the state's witnesses.  He also had the opportunity to call witnesses. (Ex. 1, Vol VI,  R 1234) He

expressed an interest in calling his sister and two neighbors.  These witnesses did not testify because of Scott's failure to call them, not because of any impediment by the state court. Scott had, despite the opportunity, failed to secure the presence of the witnesses of the violation proceeding. Though not required to do so, the state trial court gave Scott further opportunity to secure their presence and allowed him to present affidavits from the proposed witnesses. (Ex. 1, Vol VI, R 1234-1235) At the April, 2006, hearing, Scott was given the opportunity to present whatever evidence he wanted the state court to hear, and Scott indicated he did not have any witnesses. However, he tendered an affidavit from his sister, which the state court considered. (Ex. 50,  R 1247-1248)

At the conclusion of the evidentiary proceedings, the state court judge made specific findings with regard to Scott's violation of conditions one and five including that Scott stole money from Mr. Neely and Ms. Tucker (Ex. 50,  R 1256, 1258), who, among others, testified at the violation proceedings. (Ex. 50, R 1200-1214, 1221-1233). In accordance with its oral findings, the state court rendered a written statement identifying the specific conditions violated. (Ex. 1, Vol VI, R 1101, 1163). Notwithstanding Scott's suggestion otherwise, due process did not require the state judge to elaborate any more that he did on the reason for his decision to find that Scott had violated probation. From the state court's findings, Scott had sufficient notice of, and opportunity to question, the basis for revoking his probation.

Based on the state court record, it is objectively reasonable to conclude the minimum procedural safeguards required by due process were satisfied in his case. Thus, the per curiam affirmance in Scott's direct appeal resulted in a reasonable application of federal law as clearly established by the Supreme Court and a reasonable determination

-14-

of the facts in light of the evidence.

Ground one does not warrant relief.

Ground Two

Scott contends he is being confined illegally. Asserting that he did not commit grand theft, Scott sets out his version of the underlying facts concerning the allegation that he violated probation by not reporting as instructed. Scott claims he did not report because he was purportedly in fear for his life in September 2005.

Scott does not allege any independent constitutional violation in ground two. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact. *See Herrera v. Collins*, 506 U.S. 390 (1993). Moreover, this court does not have subject matter jurisdiction to determine whether the evidence related to the grand theft conviction demonstrated a willful and substantial state law probation violation.

A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held "in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a). A state's interpretation of its own rules or statutes does not raise a federal constitutional issue. *Wainwright v. Goode*, 464 U.S. 78 (1983), *reh'g denied*, 465 U.S. 78 (1984). The writ of habeas corpus, 28 U.S.C. § 2254, was not enacted to enforce state-created rights. *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000).

Furthermore, Scott did not exhaust ground two by raising the constitutional dimension, if any, of his claim at his violation proceedings before raising the claim on direct appeal. By not preserving his issue as a constitutional claim in the first instance, Scott deprived the Florida courts of a full opportunity to resolve any constitutional issues by

invoking one complete round of the State's established appellate review process.

In Florida, to preserve an argument for appeal, the argument must be asserted as the legal ground for the objection, exception, or motion below. *See Archer v. State*, 613 So. 2d 446, 448 (Fla. 1993); *Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982). Florida's preservation requirement is consistently and regularly applied. The per curiam affirmance in Scott's direct appeal rests on independent and adequate state grounds procedurally barring federal review of ground two. Scott does not make the required showing to excuse his procedural default.

Alternatively, Scott does not make a threshold showing under AEDPA's highly deferential standards of review. In the probation revocation context, the sufficiency of the evidence underlying the original conviction is not at issue. Accordingly, *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), does not govern the underlying analysis. A revocation of probation decision passes constitutional muster under the Fourteenth Amendment Due Process Clause as long as it is not "totally devoid" of evidentiary support. *Douglas v. Buder,* 412 U.S. 430, 432 (1973)(per curiam).

The State introduced evidence supporting the state court's findings, including, among other things, the probation officer's testimony, which revealed that Scott did not report as instructed. (Ex. 50, R 1195-1196). Victim Tucker's testimony revealed, among other things, that she met Scott at a car dealership to purchase a vehicle and he accompanied her to an ATM where she withdrew and gave him $600 along with some checks to purchase a vehicle. Scott entered a Verizon building and did not return, and she never received the promised vehicle. (Ex. 50, R 1200-1205)

Scott committed a similar theft from victim Neely, who, among others, identified

Scott as the perpetrator. (Ex. 50, R 1216) Scott did not deny his failing to report or his taking each of the victim's money. Scott's explanations for his actions were not credited by the state trial court as fact-finder, and Scott does not overcome the presumption of correctness of the state court's findings by clear and convincing evidence. Title 28 U.S.C. § 2254(e)(1). Nor does he demonstrate the state decision resulted in an unreasonable application of *Douglas v. Buder* or an unreasonable determination of the facts in light of the evidence.

Ground two does not warrant relief.

Ground Three

Scott contends the trial court failed to find that he willfully and substantially violated his probation. This Court does not have subject matter jurisdiction to address this ground. Whether the state judge's revocation findings meet state law requirements does not present a cognizable basis for federal habeas corpus relief. Furthermore, Scott did not properly exhaust his claim by presenting the federal constitutional dimension of his claim to the trial court before raising the claim on direct appeal. As with grounds one and two, he did not preserve a federal claim regarding the findings for review, and failing to do so, he did not afford the Florida courts a full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. The per curiam affirmance in his direct appeal rests on independent and adequate grounds of the state's preservation rule. Therefore, the claim is procedurally barred. Scott does not make the required showing to excuse his procedural default.

Alternatively, on the merits, the findings of the state court satisfy due process requirements. The state court decision resulted in a reasonable application of Supreme

-17-

Court precedent and a reasonable determination of the facts in light of the evidence.

Ground three does not warrant relief.

## Ground Four

Scott contends he was denied the right to present evidence in his own defense in his violation proceedings. To the extent he advances his claim based on state law, this Court does not have subject matter jurisdiction to address the claim.

In addition, Scott did not fairly and timely present the federal constitutional dimension of his claim to the state trial court. As with grounds one through three, he defaulted his claim by not preserving the claim before raising it on direct appeal. The per curiam affirmance in his direct appeal rests on independent and adequate state grounds procedurally barring review of ground four, and Scott does not make the requisite showing to excuse his procedural default.

Alternatively, Scott's claim has no merit.  Scott was not deprived of the right to present witnesses or documentary evidence in his own behalf. He bears sole responsibility for any lack thereof, having been afforded the opportunity to present such on his own behalf. He fails to show the state court decision resulted in an unreasonable application of federal law as clearly established by the Supreme Court or an unreasonable application of the facts in light of the evidence.

Ground four does not warrant relief.

## Ground Five

Scott claims he was denied the right to challenge the state's evidence under Florida's preponderance of the evidence standard.  This Court does not have subject matter jurisdiction to address this state law claim. Furthermore, Scott did not preserve for

review a constitutional claim regarding the state's evidence in relation to the required proof at the evidentiary violation proceedings in his case. As a result, he did not fairly present his claim to the trial court before raising the claim on direct appeal. Florida's preservation requirement is an independent and adequate state ground, and it cannot be presumed the Florida appellate court ignored its procedural rules in such regard.

Alternatively, ground five has no merit. The state decision resulted in an objectively reasonable application of *Douglas* and a reasonable determination of the facts in light of the evidence.

Ground five does not warrant relief.

Ground Six

Scott claims the state court appointed a private investigator to assist him in gathering crucial evidence and he was denied the right to complete the investigation. Scott did not fairly present the constitutional dimension of his claim to the Florida trial court and then to the state district court of appeal. As a result, ground six is procedurally barred. Scott has not shown cause and prejudice to overcome the procedural bar.

Scott relies on his Rule 3.850 motion to demonstrate exhaustion of this claim. However, Scott was barred from raising this claim in a Rule 3.850 motion, which, if his claim had been preserved, could and should have been raised on direct appeal.

The state postconviction court expressly applied Florida rules in denying Scott's Rule 3.850 claim on this issue. The ensuing per curiam affirmance of the denial of the Rule 3.850 motion rests on independent and adequate grounds. A per curiam affirmance of a trial court's finding of a procedural default is a sufficiently clear and express statement of reliance on an independent and adequate state ground to bar consideration by the federal

courts. *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir.), *cert. denied*, 498 U.S. 832 (1990). Scott does not show cause and prejudice or that a fundamental miscarriage will result if this Court does not rule on this claim.

Ground six does not warrant relief.

Accordingly, the Court orders:

That Scott's petition is denied. The Clerk is directed to enter judgment against Scott and to close this case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

Because Petitioner is not entitled to a certificate of appealability, Petitioner is not entitled to appeal in forma pauperis. Petitioner is assessed the $455.00 filing fee unless the Eleventh Circuit grants him leave to proceed on appeal in forma pauperis.

ORDERED at Tampa, Florida, on October 25, 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Jacob Wesley Scott